**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| **Christine Tonge, on behalf of herself** <br> **and all others similarly situated** : <br> : <br> : <br> **PLAINTIFF,** : <br> : <br> **v.** : <br> : <br> **CPC Logistics Inc.** : <br> : <br> **DEFENDANT.** : <br> : | **Civil Action No. 2:16-cv-09579** |

**RESPONSE OF PLAINTIFF CHRISTINE TONGE IN OPPOSITION TO**
**DEFENDANT CPC LOGISTICS INC. MOTION TO DISMISS**
<u>**TO BE HEARD ON JULY 3, 2017**</u>

Richard Kim, Esquire
Drucilla Tigner, Esquire
THE KIM LAW FIRM LLC
Attorney I.D. Nos.: 010412005/155772016
Centre Square – West Tower
1500 Market Street, Suite W-3110
Philadelphia, PA 19102
855.996.6342

*Attorneys for Plaintiff Christine Tonge*

Dated:  June 19, 2017

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES ............................................................................. ii

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND AND PROCEDURAL HISTORY ..........................................2

CPC's Disclosures Were Not Clear And Conspicuous, In A Document Consisting Solely Of The Disclosure, Violating FCRA § 1681b(b)(2)(A)(i) ...........................3

CPC Knew That It Was Supposed To Provide Pre-Adverse Action Notice As Required By The FCRA ...............................5

CPC Failed To Provide Post Adverse Action Notice ...............................6

Procedural History ...............................7

ARGUMENT ....................................................................................................8

I.      Standard Of Review ...............................................................................8

II.     This Court Has Subject Matter Jurisdiction Over This Matter ...............9

        a.   Statutory Background ...................................................................9

        b.   Plaintiff Has Established Standing To Assert Her Claims Under The FCRA And NJFCRA Because Of Her Concrete Injuries ...........................10

        c.   Ms. Tonge Has Suffered Concrete Injuries-In-Fact ........................12

             i.    CPC's Failure To Provide A Clear And Conspicuous Standalone Disclosure (Count I) Is An Informational Injury .......................12

             ii.   CPC's Failure To Provide Pre-Adverse Action Information (Count II) And Post-Adverse Action Information (Count III) Are Informational Injuries 14

             iii.  CPC's Failure To Provide A Clear And Conspicuous Standalone Disclosure (Count I) Resulted In An Invasion Of Ms. Tonge's Privacy ...18

                   1.   Plaintiff Has Sufficiently Alleged A Privacy Harm In The Amended Complaint ..........................................19

III.    CPC Did Not Comply With the FCRA Or NJFCRA ...........................20

a.  CPC's Claim That It Does Not Have To Comply With § 1681b(b)(2)(A) Is Unsupported By The Express Wording Of The FCRA .................................20

i.  If The Court Determines That § 1681b(b)(2)(A) Does Not Apply, Leave To Amend Should Be Granted To Allege A Violation Of Subparagraph (B) ........................................................................................................23

b.  CPC Failed To Provide A Clear And Conspicuous Disclosure, Solely In A Document As Required By § 1681b(b)(2)(A) ...................................................23

c.  CPC Violated § 1681b(b)(3), And Failed To Supply Post-Adverse Determination Information (Count III) ...........................................................24

d.  N.J.S.A. 56:11-31(e)(1), (2) Are Not Preempted By The FCRA ..................25

IV.  Plaintiff Has Stated Claims For Classwide Relief ..................................................27

CONCLUSION ..........................................................................................................31

## **TABLE OF AUTHORITIES**

### **Cases**

Alston v. Countrywide Fin. Corp., 585 F.3d 753 (3d Cir. 2009).......................................19

Alston v. Parker, 363 F.3d 229 (3d Cir. 2004) ................................................................20

Baney v. Trans Union, LLC, No. 1:06-CV-2181, 2007 WL 1098523 (M.D. Pa. Apr. 10, 2007) ..........................................................................................................................25

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ....................................................19, 28

Blunt v. Lower Merion Sch. Dist., 767 F.3d 247 (3d Cir. 2014).........................................8

Boyd v. CEVA Freight, LLC, No. 3:13-CV-00150-JAG, 2013 WL 6207418 (E.D. Va. Nov. 27, 2013) ......................................................................................................22,23

Burrell v. DFS Servs., LLC, 753 F. Supp. 2d 438 (D.N.J. 2010) .....................................27

Chiang v. Veneman, 385 F.3d 256 (3d Cir. 2004)............................................................29

Clark v. McDonald's Corp., 213 F.R.D. 198 (D.N.J. 2003)..............................................28

Connelly v. Lane Const. Corp., 809 F.3d 780 (3d Cir. 2016)...........................................19

Constitution Party of Pa. v. Aichele, 757 F.3d 347 (3d Cir. 2014).....................................8

Credit Data of Ariz., Inc. v. Ariz., 602 F.2d 195 (9th Cir. 1979) ......................................25

Dalton v. Capital Associated Indus., 257 F.3d 409 (4th Cir. 2001)...................................9

Davenport v. Farmers Ins. Group, 378 F.3d 839 (8th Cir. 2004) .....................................25

Daniel v. Swift Transp. Corp., 2012 WL 12827627 (D. Ariz. Jan. 9, 2012)....................22

Federal Election Commission v. Akins, 524 U.S. 11 (1998).......................................12,17

Forst v. Live Nation Entm't Inc., No. 14-2452, 2015 WL 858314 (D.N.J. Feb. 27, 2015)........................................................................................................27

Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523 (2013) .......................................18

Grant ex rel. Family Eldercare v. Gilbert, 324 F.3d 383 (5th Cir. 2003) ..........................17

Hughes v. Fid. Bank, 709 F. Supp. 639 (E.D. Pa. 1989) ..................................................25

In re Google Inc. Cookie Placement Consumer Privacy Litig., 806 F.3d 125 (3d Cir. 2015) ........................................................................................19

In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625 (3d Cir. 2017) 8, 18

In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305 (3d Cir. 2008) ..........................29

In re Michaels Stores Inc., 2017 WL 354023 (D.N.J. Jan. 24, 2017) ..................12,13,14

Kanter v. Barella, 489 F.3d 170 (3d Cir. 2007) ....................................................8

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ...............................9,11,19

Manuel v. Wells Fargo Bank, Nat. Ass'n, 123 F. Supp. 3d 810 (E.D. Va. 2015) ............17

McNulty v. Fed. Hous. Fin. Agency, 954 F. Supp. 2d 294 (M.D. Pa. 2013), aff'd, (3d Cir. Mar. 18, 2014) ......................................................................27

McPherson v. Canon Business Solutions, Inc., No. 12-7761, 2014 WL 654573 (D.N.J. Feb. 20, 2014) ................................................................27

N.J. Thoroughbred Horseman's Ass'n, Inc. v. Alpen House, No. 08-cv-613, 2012 WL 893092 (D.N.J. Mar. 14, 2012) ............................................28

Panzer v. Swiftships, LLC, Civ. A. 15-2257, 2015 WL 6442565 (E.D. La. Oct. 23, 2015) ................................................................17

Public Citizen v. Dep't of Justice, 491 U.S. 440 (1989) ...................................12

Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235 (4th Cir. 2009) ................................9

Schor v. State Farm Fire & Casualty Ins. Co., 2015 U.S. Dist. LEXIS 33266 (E.D. Pa. Mar. 18, 2015) ......................................................................20

Smith v. Lyons, Doughty & Veldhuius, P.C., Civ. A. 07-5139, 2008 WL 2885887 (D.N.J. July 23, 2008) ................................................................27

Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016) ............................10,11,12,13,19

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998) ...........................11

Stone v. Advance Amer., 278 F.R.D. 562 (S.D. Cal. 2011) ................................29

Sullivan v. DB Investments, Inc., 667 F.3d 273 (3d Cir. 2011) .........................29

<u>Summerfield v. Equifax Info. Servs. LLC</u>, 264 F.R.D. 133 (D.N.J. 2009) ......................29

<u>Thomas v. John A. Youderian Jr., LLC</u>, No. 2:16-CV-01408-KM-MAH, 2017 WL
     1250988 (D.N.J. Feb. 3, 2017)..................................................................................13

<u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338 (2011).....................................................29

<u>Wetzel v. Liberty Mut. Ins. Co.</u>, 508 F.2d 239 (3d Cir. 1975) .........................................31

### **Statutes and Rules**

U.S. Const., Art. III ...........................................................................2,8,11,12,14,17,18,19

15 U.S.C. § 1681b.........................................1, 2,3,7,10,13,15,16,17,18,20,21,22,23,24,25

15 U.S.C. § 1681g.................................................................................................................7

15 U.S.C. § 1681m..........................................................................................................23,29

15 U.S.C. § 1681t...........................................................................................................25,26

N.J.S.A. 56:11-28...............................................................................................................1

N.J.S.A. 56:11-31.........................................................................................1, 7,14,15,25,26,27

Fed. R. Civ. P. 8 ..................................................................................................................8

Fed. R. Civ. P. 12(b)(1)..................................................................................................1,8,10

Fed. R. Civ. P. 12(b)(6)..................................................................................................1,8,28

Fed. R. Civ. P. 23 ........................................................................................................8,28,29

### **Secondary Sources**

115 Cong. Rec. 2412 (1969) ...............................................................................................9

140 Cong. Rec. H9797-05 ..................................................................................................10

138 Cong. Rec. H9370-03 ..................................................................................................10

H. Rep. No. 103-486...........................................................................................................10

S. Rep. No. 91-157 (1969) ...................................................................................................9

S. Rep. No. 104-185 (1995) ...........................................................................................10

Goldfarb, FTC Informal Staff Opinion Letter (Sept. 20, 1978)....................................25,26

Plaintiff Christine Tonge ("Ms. Tonge" or "Plaintiff") opposes Defendant CPC Logistics, Inc.'s ("CPC" or "Defendant") Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) (the "Motion") (ECF Doc. 19).

## PRELIMINARY STATEMENT

CPC has willfully and repeatedly flouted the requirements of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA") and the New Jersey Fair Credit Reporting Act, N.J.S.A. 56:11-28, *et seq.* (the "NJFCRA"). CPC relies on subterfuge and an incomplete recitation of the case to justify dismissal. CPC argues that it complied with the FCRA and NJFCRA - and even if it did not - this Court lacks jurisdiction because Ms. Tonge did not suffer a concrete injury. Neither argument has any merit. CPC violated the FCRA and NJFRCA by:

- failing to provide a clear and conspicuous disclosure, in a document that consists solely of the disclosure because, among other reasons, it supplied *two separate disclosures* that include material differences, prohibiting a prospective employee from knowing which is the controlling disclosure. (Count *One* of the Am. Comp.; Violation of § 1681b(b)(2)(A)(i));

- failing to provide Ms. Tonge with the required information prior to denying her employment, thus depriving her of an opportunity for potential employment with CPC – *i.e.*, 3 accidents falsely listed in her DAC Report. (Count *Two* of the Am. Comp.; Violations of N.J.S.A. 56:11-31(e)(1), (2)). CPC simply sent a letter dated August 4, 2016 informing Ms. Tonge that it denied her employment because of 3 so-called accidents. CPC, incredibly, claims that it is not liable for violating the NJFCRA despite claiming in its summary of rights that it was bound to adhere to these requirements; and

1

- failing to provide Ms. Tonge with required post-adverse action information. (Count *Three* of the Am. Comp; Violations of 15 U.S.C. § 1681b(b)(2)(B)(i)(II), (III) and (IV)). CPC claims it used substitute means to provide this information. None of those excuses, however, are provided for by the clear and unambiguous language of the FCRA. This so-called alternative means of notification does not exist.

All of these violations resulted in substantive concrete harms to Ms. Tonge conferring Article III standing. CPC's failure to provide a clear and conspicuous disclosure goes to the actual substance of the disclosure, not some procedural formatting issue, resulting in both informational and privacy harms. Likewise, CPC's failure to provide both pre and post adverse action notifications are substantive violations that deprived Ms. Tonge of Congressionally mandated information, that goes far beyond a "bare procedural violation". Accordingly, CPC's Motion should be denied.

## BACKGROUND AND HISTORY

CPC is a nationwide trucking company with locations spanning the entire country. Am. Comp. ¶ 20. CPC obtains background check reports from HireRight, LLC to qualify potential employees. Am. Comp. ¶ 20. The reports are called Drive-a-Check reports ("DAC Report"). See id. A DAC Report contains extremely sensitive personal information such as commercial truck drivers' employment history, criminal background details and driving record. Id.

On or around July 20, 2016, Plaintiff applied online for a commercial truck driver position with CPC. Am. Comp. ¶ 21. CPC sent approximately 20 pages of documentation to her, including several disclosure forms that contained information that was redundant, at times contradicting, and included state specific background check information for New York, Maine, Oregon, Washington,

Minnesota, Oklahoma and California - *despite Ms. Tonge being a New Jersey applicant*.[1] <u>Id</u>.

**CPC's Disclosures Were Not Clear and Conspicuous, In A Document Consisting Solely of<br>the Disclosure, Violating FCRA § 1681b(b)(2)(A)(i)**

On July 19, 2016, CPC presented Ms. Tonge, all at once, with the following 5 different documents that span approximately 20 pages: (1) CPC HireRight Disclosure, attached as **Exhibit "A-1"** to the Certification of Richard Kim; (2) CPC HireRight Disclosure and Authorization, attached as **Exhibit "A-2"**[2]; (3) CPC Asurint Disclosure, attached as Exhibit **"B-1"**; (4) CPC Asurint Disclosure Authorization, attached as Exhibit **"B-2"**; and (5) Summary of Rights, attached as **Exhibit "C"**.[3] Am. Comp. ¶ 21.

The CPC HireRight Disclosure relates to CPC's request to obtain a consumer report from HireRight. The CPC HireRight Disclosure is approximately two full pages in length, and includes state specific notices for various states. **Exhibit "A-1"**. The state specific notices are provided to all prospective applicants regardless of their location. In Ms. Tonge's situation, only the New Jersey disclosure was relevant. The HireRight Disclosure then referenced eight (8) additional pages of documentation titled "A Summary of Your Rights Under the FCRA" (the "Summary of Rights"). The Summary of Rights included state specific consumer reporting requirements, that are entirely irrelevant, depending on the state of the applicant.

CPC also provides the HireRight Disclosure and Authorization. **Exhibit "A-2"**. The HireRight Disclosure and Authorization is duplicative of the HireRight Disclosure in that it also

---

[1] CPC's disclosure forms are routinely and systemically used by the Company for prospective employees. <u>Id</u>. at ¶ 23.

[2] Should CPC argue that this document does not constitute a disclosure, such an argument would be false because the HireRight Authorization and Disclosure specifically states in the first line of the document that it is a "Disclosure and Authorization form".

[3] On July 19, 2016, CPC sent documentation to Ms. Tonge inviting her to apply for a position. This email included the numerous disclosures and documentation discussed herein. The email is attached as **Exhibit "D".**

3

purports to provide information relating to CPC's request to obtain a consumer report from HireRight.  *These two disclosures used by CPC are not clear, conspicuous because there is no conceivable way any prospective employee could know which is the controlling disclosure.*

These disclosures are substantively different in the following ways:

| **CPC HireRight Disclosure:** | **CPC HireRight Disclosure and Authorization:** |
|---|---|
| • Discloses that the consumer report obtained may include information concerning social security number verifications; address history; credit reports and history; criminal records and history; public court records; driving records; accident history; worker's compensation claims; bankruptcy filings; educational history verifications; employment history verifications; personal and professional references checks; professional licensing and certification checks; drug/alcohol testing results, and drug/alcohol history in violation of law and/or company policy; and other information bearing on character; | • Discloses that the consumer report obtained may include information concerning "employment and earnings history, education, credit history, motor vehicle history, criminal history, military service, professional credentials and licenses." |
| • Does *not include an authorization* for a prospective employee despite being titled "Consumer Disclosure and Authorization Form"; | • Includes an authorization for the signature of a prospective employee; |
| • Includes additional state law notices for California, Maine, Massachusetts, Minnesota, New Jersey, New York and Washington State; | • Does not include the state law notices; |
| • Does not provides applicants with the option to obtain a copy of a background report; | • Provides applicants from California, Minnesota or Oklahoma *with the option* to obtain a copy of a background report; |
| • Includes a separate website link to obtain information about HireRight's privacy practices; | • Does not include a separate website link to obtain information about HireRight's privacy practices; |

| | |
|---|---|
| • States that the prospective employee may "request more information about the nature and scope of an investigative consumer report, if any, by contacting the Company" (para. 5) | • Does not provide the prospective employee with the option to obtain more information about the nature and scope of an investigative report; |
| • 2 full pages of disclosure information. | • ½ a page of disclosure information. |

Adding to the onslaught of documentation, CPC provides another two separate disclosures to obtain investigative background check reports from Asurint, Inc. (the "CPC Asurint Disclosure" and "CPC Asurint Authorization and Disclosure").  These disclosures are also problematic because a prospective employee could not know which is the controlling disclosure.

**CPC Knew That it was Supposed to Provide**
**Pre-Adverse Action Notice as Required by the NJFCRA**

By letter dated August 4, 2016 (the "Denial Letter"), CPC denied Ms. Tonge' s employment because of 3 accidents listed on her DAC Report.  Those three accidents were false.  See Ms. Tonge's Complaint against HireRight, Inc. and Kreilkamp Trucking, attached as **Exhibit "E"**. CPC failed to provide Ms. Tonge with required notice prior to taking adverse employment action. CPC knew its obligations, and failed to comply with the law.  The Summary of Rights sent to Ms. Tonge notifies New Jersey applicants of the following, in which states in relevant part:

(NEW JERSEY APPLICANTS ONLY)
A Summary of Your Rights
Under New Jersey's Fair Credit Reporting Act

Under the New Jersey Fair Credit Reporting Act (NJFCRA or the "Act"), an employer, **before taking adverse employment action,** is required to provide the applicant or employee with a summary of their rights under the Act with respect to consumer reports or investigative consumer reports obtained for employment purposes from a consumer reportting agency (CRA).  **This Summary is intended to serve that purpose**.

\*\*\*

• **You must be told if information in your file has been used against you for employment purposes.**  An employer who uses information

from a consumer or investigative consumer report to take action against you – such **as denying an application for employment** or terminating employment – must tell you that its decision is based in whole or in part on the report.  **The employer also must provide you with a description of your rights under the NJCRA and a reasonable opportunity to dispute with the CRA any information on which the employer relied.**

**Exhibit "C"**, pg. 4. (emphasis added).

CPC admitted in its Summary of Rights that it was *required* to provide a description of rights, and "a reasonable opportunity to dispute with the [HireRight] any information on which the employer relied" in denying employment.  CPC failed to comply with the NJFCRA; did not provide a description of her rights; and did not allow Ms. Tonge a reasonable opportunity to dispute the reported accidents in her DAC Report.

CPC wrongly claims that the NJFCRA's pre-adverse action requirements are preempted by the FCRA.  As discussed more fully herein, the FCRA does not preempt the NJFCRA, as there is no conflict between providing pre-adverse action notice, and post-adverse action notice.

**CPC Failed to Provide Post Adverse Action Notice**

In the Denial Letter CPC says it denied employment based on accidents listed in Ms. Tonge's DAC Report. (Am. Comp. ¶ 24):

Your application for employment by CPC Logistics has been denied.
You do not meet CPC logistics minimum hiring criteria based on the accident record found within the HireRight report included with this notice.
**In addition, you did not list any accident on your CPC application.**
Thank you for your interest and applying at CPC Logistics.

Attached as **Exhibit "G"**. (emphasis added).

CPC failed to provide, within 3 business days of the adverse action, the: (i) address and telephone number of the consumer reporting agency that furnished the report; (ii) failed to notify the consumer that the consumer reporting agency did not make the decision to take the adverse

6

action; and (iii) failed to notify the consumer that a free copy of the report may be obtained, and a dispute made with the consumer reporting agency. 15 U.S.C. § 1681b(b)(2)(B)(i)(II), (III) and (iv). The only thing that Ms. Tonge ever received was the Denial Letter, and the portions of Ms. Tonge's DAC Report that CPC found to be relevant.

## **Procedural History**

On December 29, 2016, Ms. Tonge instituted this action on behalf of herself and putative class members.  On March 24, 2017, Plaintiff filed the Amended Complaint.[4]  The Amended Complaint sets forth the following violations of the FCRA and the NJFCRA:

- Count One of the Am. Comp for violating 15 U.S.C. § 1681b(b)(2)(A)(i): failing to provide a clear and conspicuous disclosure, consisting solely of the disclosure;

- Count Two of the Am. Comp. for violating N.J.S.A. 56:11-31(e)(1), (2)[5]: failing to provide Ms. Tonge with pre-adverse action notice prior to denying her employment; and

- Count Three for violating 15 U.S.C. § 1681b(b)(2)(B)(i)(II), (III) and (IV): failing to provide post-adverse action notice after denying her employment.

For each count alleged above, there is a corresponding putative class.  CPC claims that Ms. Tonge has not alleged proper class allegations at this early stage.  However, as discussed further here in, CPC's argument is premature.  Moreover, a plain reading of the Amended Complaint confirms that Ms. Tonge has properly pleaded class claims pursuant to Rules 8 and 23.

---

[4]     CPC takes issue with the filing of the Amended Complaint.  However, what CPC fails to recognize is that the initial complaint is a non-operative document, and Ms. Tonge is well within her rights to amend her allegations based on information that is disclosed.  It is telling of the merits of CPC's defenses that it even discusses a non-operative pleading that is no longer controlling.

[5]     The N.J.S.A. 56:11-31(e)(2) requires that employers, prior to taking adverse action, comply with 15 U.S.C. § 1681g(c)(1)(B), which contains six separate subsections.  CPC violates subsections (i), (ii), (iv), and (v) of 15 U.S.C. § 1681g(c)(1)(B). Am. Comp. fn. 1.

## ARGUMENT

## I.      STANDARD OF REVIEW

Defendant moves to dismiss Plaintiff's claims under Rules 12(b)(1) and 12(b)(6).  In this case, under both Rules, the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir.2007).

When deciding a Rule 12(b)(1) motion to dismiss, the court must first determine whether the motion presents a "'facial' attack" or a "'factual' attack" on the claim in issue because that distinction determines "how the pleading must be reviewed."  Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357-58 (3d Cir. 2014) (citations omitted).  A facial attack calls for the court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, accepting as true the facts alleged in the complaint, and construing those facts in favor of the nonmoving party.  Id.  Here, Defendant has instituted a facial attack on the Court's jurisdiction to hear this matter by alleging that Plaintiff lacks Article III standing since she has not suffered a concrete injury.  (Def.'s Brief, pg. 6).

Additionally, "[i]n the context of a motion to dismiss, [the Third Circuit has] held that the [i]njury-in-fact element is not Mount Everest.  The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that claimant allege[ ] some specific, identifiable trifle of injury."  In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 633–34 (3d Cir. 2017) citing Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 278 (3d Cir. 2014) (emphasis omitted) (citation and internal quotation marks omitted) (second alteration in original). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations

embrace those specific facts that are necessary to support the claim." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (citation and internal quotation marks omitted) (alteration in original).

## II.   THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS MATTER

### a.   <u>Statutory Background</u>

"Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry."   <u>Dalton v. Capital Associated Indus., Inc.</u>, 257 F.3d 409, 414 (4th Cir. 2001). Recognizing the "vital role" that consumer-reporting agencies play in the modern economy, Congress enacted the FCRA so that they would "exercise their grave responsibilities" in a way that "ensure[s] fair and accurate credit reporting."   15 U.S.C. § 1681(a); <u>Robinson v. Equifax Info. Servs., LLC</u>, 560 F.3d 235, 239 (4th Cir. 2009).  The FCRA thus contains "a variety of measures designed to insure that agencies report accurate information." <u>Dalton</u>, 257 F.3d at 414–15.

A prime motivation for the FCRA was the impact of third-party data collection on the employment market and particularly on individual job seekers. "Employers were placing increasing reliance on consumer reporting agencies to obtain information on the backgrounds of prospective employees," and "Congress found that in too many instances agencies were reporting inaccurate information that was adversely affecting the ability of individuals to obtain employment"—often without consumers' knowledge. <u>Id.</u>; <u>see</u> S. Rep. No. 91-157, at 3-4 (1969) (describing "inability" of consumers to discover errors).  And even if consumers learned of an error, they usually had "difficulty in correcting inaccurate information" because of skewed market incentives: "a credit reporting agency earns its income from creditors or its other business customers," and "time spent with consumers going over individual reports reduces . . . profits." 115 Cong. Rec. 2412 (1969).

The FCRA includes specific requirements when an employer plans to use a consumer report or takes adverse action based in whole or in part on that report. See 15 U.S.C. § 1681b(b)(2), (b)(3). "Specifically, before taking adverse action regarding the consumer's current or prospective employment, an employer must provide to the consumer a copy of the report and a written description of the consumer's rights under the FCRA. The employer must also provide the consumer with a reasonable period to respond to any information in the report that the consumer disputes and with written notice of the opportunity and time period to respond." H. Rep. No. 103-486.

These requirements were in large part intended to ameliorate Congress's "concern[]" that "permit[ting] employers to obtain consumer reports pertaining to current and prospective employees . . . may create an improper invasion of privacy." S. Rep. 104-185 (1995), at 35. As one legislator explained, these FCRA protections represented "new safeguards to protect the privacy of employees and job applicants"; the Act as a whole, he continued, was "an important step to restore employee privacy rights." 140 Cong. Rec. H9797-05 (Statement of Congressman Vento); see also 138 Cong. Rec. H9370-03 (Statement of Congressman Wiley) (stating that the FCRA "would limit the use of credit reports for employment purposes, while providing current and prospective employees additional rights and privacy protections.").

### b.  Plaintiff has Established Standing to Assert Her Claims Under the FCRA and NJFCRA Because of Her Concrete Injuries

CPC challenges this Court's subject-matter jurisdiction under Rule 12(b)(1), incorrectly arguing that the Plaintiff has not suffered a concrete injury-in-fact under the Supreme Court's decision in Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016). This position is false, and fails to recognize Plaintiff's informational (including loss of potential employment) and privacy harms.

For federal court standing, the injury must be both (1) particularized and (2) concrete. CPC

10

does not dispute that Ms. Tonge's injuries are particularized, only that they are not "concrete". Elaborating on the meaning of concreteness, the Court in <u>Spokeo</u> distilled several "general principles" from its prior cases, without going beyond those cases. <u>Id</u>. at 1549. First, it acknowledged that, although tangible injuries (like physical or economic harm) are "perhaps easier to recognize" as concrete injuries, "intangible injuries can nevertheless be concrete," as can injuries based on a "risk of harm." <u>Id</u>. Second, "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." <u>Id</u>. Thus, if the "alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"— or, put in fewer words, if "the common law permitted suit" in analogous circumstances — the plaintiff will have suffered a concrete injury that can be redressed by a federal court. <u>Id</u>.; <u>see also</u> <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 102 (1998) (explaining that Article III encompasses "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process").

But the plaintiff need not dig up a common-law analogue to establish a concrete injury, because Congress has the power (and is in fact "well positioned") "to identify intangible harms that meet minimum Article III requirements," even if those harms "were previously inadequate in law." <u>Spokeo,</u> 136 S.Ct. at 1549. Accordingly, the third principle emphasized in <u>Spokeo</u> is that Congress can elevate even procedural rights to a concrete injury if they protect against an identified harm.  Of course, "a bare procedural violation, divorced from any concrete harm" identified by Congress, will not give rise to an Article III injury. <u>Id</u>.  But a "person who has been accorded a procedural right to protect his concrete interests" has standing to assert that right, and may do so "without meeting all the normal standards for redressability and immediacy." <u>Lujan,</u> 504 U.S. at 572 n.7.

11

### c.  Ms. Tonge has Suffered Concrete Injuries-In-Fact

CPC's Violations of the FCRA and NJFCRA caused Ms. Tonge two forms of well-established, congressionally established, concrete injuries — invasion of privacy and informational harm (including loss of opportunity for employment).

### i.  CPC's Failure to Provide a Clear And Conspicuous Standalone Disclosure (Count I) is an Informational Injury

Plaintiff suffered informational injuries, which are sufficient under Spokeo to confer standing without any allegations of additional harm.  In stating the "Plaintiff need not allege any additional harm beyond the one which Congress has identified," the Supreme Court cited two cases where statutory violations, without more, constituted injury-in-fact.  See Spokeo, 136 S. Ct. at 1549 (citing Akins and Public Citizen).  Both Akins and Public Citizen involved a failure to provide statutorily-required information.[6]  As such, Spokeo establishes that informational injuries such as Plaintiff's are concrete injuries-in-fact.

CPC argues there is no informational harm because Ms. Tonge's allegations amount to mere procedural violations that fail to satisfy Article III standing. (Def.'s brief, pg. 8). As noted above, the violation of a procedural requirement of a statute is sufficient to establish a concrete harm, and whether a concrete harm results, is established on a case to case basis.  In support of its position, CPC relies on Michaels, a District of New Jersey court opinion, currently on appeal.  In

---

[6]      In Public Citizen, non-profit groups sued for access to records related to the American Bar Association's ("ABA") participation in the federal judicial nomination process, arguing that the ABA's involvement in that process brought it under the ambit of the disclosure requirements of the Federal Advisory Committee Act ("FACA"). Pub. Citizen v. U.S. Dep't of Justice, 491 U.S. 440, 447, 109 S.Ct. 2558, 2563, 105 L.Ed.2d 377 (1989). The Supreme Court rejected the argument that the groups lacked injury-in-fact, holding that "refusal to permit appellants to scrutinize the ABA Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue." Id. at 449. Notably, the Court did not require the plaintiffs to demonstrate additional injury beyond the informational deprivation. Instead, the injury was coterminous with the violation of the statutory right: denial of access to information "to the extent the [law] allows." Id. Akins adopted the same analysis. In Akins, which also involved non-profit groups seeking public disclosures, the Court built on Public Citizen, and held that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." Fed. Election Comm'n v. Akins, 524 U.S. 11, 21, 118 S.Ct. 1777, 1784, 141 L.Ed.2d 10 (1998).

re Michaels Stores, Inc., 2017 WL 354023 (D.N.J. Jan. 24, 2017). Even if the holding in Michaels stands, that case is fully distinguishable from the instant matter.

In Michaels, the plaintiffs, *who were all hired by the company*, instituted suit for being provided with background check disclosures that were included within plaintiffs' online applications.  Id. at *1.  Because the background check disclosure was in the online job application, it violated the FCRA's stand-alone disclosure requirement pursuant to § 1681b(b)(2)(A)(i). Id. The plaintiffs did not allege that there was anything improper about the substance of the disclosure itself.  Because the situation involved a purely formatting issue, without any error with the content of the disclosure, the court in Michaels found the stand-alone disclosure obligation to be a procedural requirement, without any concrete harm. Id. at *10-*11.  In arriving at its determination, the Michaels court reasoned that even though Spokeo held that a "violation of a procedural right granted by statute…need not allege any additional harm beyond the one Congress has identified," whether a procedural violation requires an additional showing of concrete harm "is situation-dependent." Id. at *8; see also, Thomas v. John A. Youderian Jr., LLC., 2017 WL 1250988, n. 7 (D.N.J. Feb. 3, 2017)(the same Court in Michaels confirming that "technical or procedural requirements may cause concrete harm, [but] whether the violation has caused such harm is situation-dependent").

CPC violated Ms. Tonge's substantive rights and failed to provide a clear and conspicuous disclosure, in a document consisting solely of the disclosure.   CPC presents prospective employees, all at once, with 5 different documents that span approximately 20 pages: CPC HireRight Disclosure, CPC HireRight Disclosure and Authorization, CPC Asurint Disclosure and CPC Asurint Disclosure Authorization.  **Exhs. A-1**, **A-2**, **B-1**, **B-2** and **C**.  *The disclosures in this case cannot be clear and conspicuous because prospective employees cannot know which*

13

*document is the controlling disclosure.*  For example, CPC presents prospective employees with both the CPC HireRight Disclosure and the CPC HireRight Disclosure and Authorization to purportedly obtain consent to obtain an investigative consumer report.  But these disclosures are materially different, and a prospective employee cannot know which disclosure is the controlling document.  See above chart, pages 4-5.

Here, unlike Michaels, CPC's failure to provide a clear and conspicuous disclosure in a stand alone document is a substantive violation that goes directly to the content of the disclosures, not just a procedural formatting violation.  CPC demands, however, a showing that Ms. Tonge did not understand the disclosure, like the case in Michaels.  But such a showing is not relevant in this situation because a prospective employee has no way to determine which document is the applicable disclosure.  This informational harm is a concrete harm establishing Article III jurisdiction with this Court.

> ### ii.   CPC's Failure to Provide Pre-Adverse Action Information (Count II) and Post-Adverse Action Information (Count III) are Informational Injuries

CPC claims that Ms. Tonge did not sustain any concrete harm for its failure to provide pre-adverse action notification (required by the NJFRCA) and post adverse action information (required by the FCRA) because the required information was supplied. (Def.'s Brief, pg 9).  This representation is plainly false, and even a cursory review of the facts confirm that CPC failed to provide the required information.

Pursuant to N.J.S.A. 56:11-31(e)(1), (2), CPC was required to disclose the following information *prior to taking denying Ms. Tonge employment*: (1) a copy of the report upon which the intended adverse action is based; (2) a description of the right of a consumer to obtain a copy of a consumer report from each consumer reporting agency; (3) the frequency and circumstances

under which a consumer is entitled to receive a consumer report without charge; (4) the right of a consumer to obtain a credit score from a consumer reporting agency, and a description of how to obtain a credit score; and (5) the method by which a consumer can contact, and obtain a consumer report from, a consumer reporting agency without charge.

Here, CPC did not comply with any provision of N.J.S.A. 56:11-31(e)(1) or (2).  CPC was supposed to send Ms. Tonge a complete copy of her consumer report *prior to taking adverse action*. Instead, CPC did not provide Ms. Tonge with any required information, did not provide her with an opportunity to contest the inaccuracies in her DAC Report, and certainly not supply a copy of the DAC Report prior to denying her employment.  At best, by letter dated August 4, 2016, after notifying Ms. Tonge that it was not hiring her, CPC sent select portions of her DAC Report that it deemed relevant.  N.J.S.A. 56:11-31(e)(1) required CPC to send a (complete) copy of Ms. Tonge's consumer report <u>prior to taking adverse action</u>, which it failed to do.

CPC also falsely claims that it supplied information that was required by N.J.S.A. 56:11-31(e)(2).  Not only did CPC not supply this information, it certainly did not supply it prior to taking adverse action.  At best, on July 19, 2016, CPC supplied Ms. Tonge with her Summary of Rights, which includes state specific information for New Jersey applicants on page 5.  The summary of rights for New Jersey residents did not inform Ms. Tonge of the frequency and circumstances under which a consumer is entitled to receive a consumer report without charge; the right of a consumer to obtain a credit score from a consumer reporting agency, and a description of how to obtain a credit score; or the method by which a consumer can contact, and obtain a consumer report from, a consumer reporting agency without charge.  Moreover, even if the Summary of Rights did provide the requisite information, which it did not, the notice would not have been effective because it was sent before an adverse determination was even made.

Equally unpersuasive is CPC's contention that it provided the post adverse action information required pursuant to § 1681b(b)(2)(B)(i)(II), (III) and (IV). The FCRA required the following information to be provided within 3 business days following adverse action: (1) the address and telephone number of the consumer reporting agency that furnished the report, § 1681b(b)(2)(B)(i)(II); (2) that the consumer reporting agency did not make the decision to take the adverse action, § 1681b(b)(2)(B)(i)(III); and (3) notify the consumer that a free copy of the report may be obtained, *and a dispute made with the consumer reporting agency*. § 1681b(b)(2)(B)(i)(IV).

CPC never provided this information to Ms. Tonge. Despite these clear facts, CPC audaciously asserts "substitute" means by which it complied with its obligations under these provisions of the FCRA. (Def.'s Brief at pg. 13). For instance, CPC claims that it supplied HireRight's contact information to Ms. Tonge, thus complying with § 1681b(b)(2)(B)(i)(II). (Def.'s Brief, pg. 13). But CPC fails to mention that this information was sent on July 19, 2016, buried within 20 pages of documentation, and far in advance of the adverse action, and certainly not within 3 business days of denying Ms. Tonge employment. CPC also argues that it should not have to notify Ms. Tonge that it was CPC that took adverse action and denied her employment, but that fact should be assumed from the Denial Letter. The clear wording of § 1681b(b)(2)(B)(i)(III) states otherwise, and CPC cannot avoid its requirements by claiming that this information is implied through its letter of August 4, 2016.

CPC next argues that it did not need to comply with § 1681b(b)(2)(B)(i)(IV) because Ms. Tonge had previously disputed the inaccurate information contained in her DAC Report. (Def.'s Brief, pgs. 9, 13). This argument misses the point. First, the FCRA does not state that employers only need provide information previously unknown to prospective employees. The FCRA makes

no reference to any such exception, nor does any case law exist supporting this "substitute" compliance with § 1681b(b)(2)(B)(i)(IV).   Second, Ms. Tonge having previously disputed the incorrectly reported accidents does not speak to whether she knew she could dispute the information again, or her rights in disputing the inaccuracies.   Thus, Ms. Tonge having previously disputed the information does not absolve CPC of its obligations pursuant to § 1681b(b)(2)(B)(i)(IV).

CPC's failure to provide both pre and post adverse action information are concrete harms, that far exceed "bare procedural violations."   Under the FCRA, individuals like Ms. Tonge "have the right to specific information at specific times"— and where that consumer "receive[s] a type of information, [but] not the type of information that he was entitled to under the FCRA," she has suffered an "informational injury."   Manuel v. Wells Fargo Bank, Nat. Ass'n, 123 F. Supp. 3d 810, 818 (E.D. Va. 2015).   Here, Defendants failed to provide Ms. Tonge with information that the FCRA and NJFCRA "guarantees" before and after taking adverse action.

Informational injuries have long been considered "concrete." For example, in a case that relied largely upon the same decisions highlighted in Spokeo, it was determined that:

> In the instant case, Plaintiff claims that he suffered an "informational injury" because he was deprived of information to which he was entitled. In Federal Election Commission v. Akins, the Supreme Court held that Congress, by statute, could create a right to information and that the denial of such information was an injury sufficient to satisfy the injury-in-fact requirement of standing. 524 U.S. 11, 21 (1998). Likewise, the Fifth Circuit has recognized such "informational injuries." See Grant ex rel. Family Eldercare v. Gilbert, 324 F.3d 383, 387 (5th Cir.2003) ("The 'inability to obtain information' required to be disclosed by statute constitutes a sufficiently concrete and palpable injury to qualify as an Article III injury-in-fact." (citing Akins, 524 U.S. at 21)). Under the FCRA, **Plaintiff and other consumers have the right to specific information at specific times.**

Panzer v. Swiftships, LLC, CIV.A. 15-2257, 2015 WL 6442565, at *5 (E.D. La. Oct. 23,

2015) (emphasis added).

Accordingly, CPC's failure to provide: (i) a clear and conspicuous disclosure in a stand-alone document; (ii) failure to provide pre-adverse action notices, and (iii) post-adverse action notices are substantive rights that demand specific information to be provided to Ms. Tonge at specified times, resulting in concrete harms.

### iii. CPC's Failure to Provide a Clear and Conspicuous Standalone Disclosure (Count I) Resulted in an Invasion of Ms. Tonge's Privacy

Because Ms. Tonge suffered concrete informational injuries, she has standing to pursue her claims even if she didn't suffer a privacy injury.[7] CPC frames the statutory violations at issue as "bare procedural violations of the FCRA" (Defs' Mem., pg. 8), while ignoring that the FCRA prohibits the procurement of Ms. Tonge's report.  The FCRA provides that a company "**may not procure** a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, **unless**" *it complies with the statutory requirements.*  15 U.S.C. § 1681b(b)(2) (emphasis added). Here, as discussed above, CPC's "disclosure" failed to comply with § 1681b(b)(2)(A) because it provides two separate disclosures, with substantive differences, preventing any prospective employee from recognizing which is the controlling disclosure.

Because of CPC's violation of the FCRA, its acquisition of Ms. Tonge's consumer report, which contains private and sensitive information, was itself unlawful.  See 15 U.S.C. § 1681b(b)(2).  This is an invasion of her right to privacy, is repeatedly reinforced by the Third

---

[7]       In the event that the Court determines that Article III standing does not exist, this matter should be remanded to New Jersey State Court to pursue the NJFCRA violations.  See Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1528, 185 L. Ed. 2d 636 (2013) ("Article III, § 2, of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies," which restricts the authority of federal courts to resolving "'the legal rights of litigants in actual controversies. . .'") (citations omitted).

Circuit and Congress. See, e.g., In re Horizon, 846 F.3d at 641 ("'[U]nauthorized disclosure of information' have long been seen as injurious" and "our precedent and congressional action lead us to conclude that the improper disclosure of one's personal data in violation of FCRA is a cognizable injury for Article III standing purposes.")(citation omitted).

Both before and after Spokeo, the Third Circuit has clearly and unequivocally held that the unlawful invasion of individual's privacy interests is a concrete injury-in-fact under Article III. In re Google Inc. Cookie Placement Consumer Privacy Litig., 806 F.3d 125, 134-135 (3d Cir. 2015), cert. denied sub nom. Gourley v. Google, Inc., 137 S. Ct. 36, 196 L. Ed. 2d 26 (2016); accord Alston v. Countrywide Fin. Corp., 585 F.3d 753, 763 (3d Cir. 2009) ("the fact that plaintiffs' injury is non-monetary is not dispositive").  Following Spokeo, the Third Circuit noted that Google is still binding in this Circuit, and that the "unlawful disclosure of legally protected information" remains "a clear de facto injury."  In re Nickelodeon, 827 F.3d at 274.

## 1.  Plaintiff has Sufficiently Alleged a Privacy Harm

Defendant claims that Ms. Tonge has failed to allege a privacy harm in the Amended Complaint. (Def.'s brief, pg. 8).  The pleadings standard at the motion to dismiss stage is not as rigid as CPC would suggest.  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (citation and internal quotation marks omitted) (alteration in original).[8]

---

[8]     Additionally, the Third Circuit has repeatedly held, all reasonable inferences should be drawn in favor of the Plaintiff, particularly at the motion to dismiss stage. See Connelly v. Lane Const. Corp., 809 F.3d 780, 790 (3d Cir. 2016) (holding that Twombly did not "undermine [the] principle" that all reasonable inferences are to be drawn in favor of the plaintiff…"); accord Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests….'") (citations omitted).

Here, the clear purpose of the § 1681b(b)(2)(A)(i) is to regulate the release of sensitive and private information. Ms. Tonge has alleged that this provision of the FCRA was violated, which provided notice that Ms. Tonge has suffered a privacy harm. Moreover, as noted within Defendant's Brief at page 8, footnote 4, CPC concedes that it is on notice that Plaintiff has alleged a privacy harm and CPC cannot allege any unfair surprise. At minimum, if there is a perceived defect relating to Plaintiff's asserted harm, leave to amend the Amended Complaint should be granted. See Schor v. State Farm Fire & Casualty Ins. Co., 2015 U.S. Dist. LEXIS 33266, at *11-13 (E.D. Pa. Mar. 18, 2015) ("[A] district court must ordinarily permit a curative amendment unless such an amendment would be inequitable or futile.") (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, Ms. Tonge has informational and privacy harms constituting concrete injuries.

### III.   CPC DID NOT COMPLY WITH THE FCRA OR THE NJ FCRA.

#### a.   CPC's Claim That It Does Not Have to Comply With § 1681b(b)(2)(A) Is Unsupported By The Express Wording Of The FCRA

CPC alleges that it does not need to provide a clear and conspicuous disclosure, solely in a document because it is entitled to the purported "Commercial Driver Exception" set forth in § 1681b(b)(2)(A)(B). (Def.'s Brief at pg. 10). Section 1681b(b)(2)(A)(B) ("Subparagraph (B)), however, does not provide for what CPC claims. Section 1681b(b)(2)(A) specifically states:

> (A) *In general.* **Except as provided** in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless – (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause(i) the procurement of the report by that person.

(emphasis added.)

Subparagraph (B) provides:

> (B) *Application by mail, telephone, computer, or other similar means.* If a consumer described in subparagraph (C) applies for employment by mail, telephone, computer, or other similar means, at any time before a consumer report is procured or caused to be procured in connection with that application – (i) the person who procures the consumer report on the consumer for employment purposes shall provide to the consumer, by **oral, written, or electronic means**, notice
> that a consumer report may be obtained for employment purposes, and a summary of the consumer's rights under section 615(a)(3); and (ii) the consumer shall have consented, orally, in writing, or electronically to the procurement of the report by that person.

(emphasis added.)

These statutes are clear. The requirements of § 1681b(b)(2)(A) apply, "except as provided" by Subsection (B), which permits trucking companies with three different *methods* of disclosing its intent to acquire a consumer report: oral, written, or electronic means.  There is no provision within Subsection (B) as to the form that a written disclosure must take.  In other words, when making a written disclosure, a trucking company must still provide a clear and conspicuous disclosure, solely in a document, pursuant to Section 1681b(b)(2)(A) since subparagraph (B) does not provide for any other form for the written disclosure. This reading of the FCRA is also in line with the alternative disclosure means provided by in Subparagraph B. See 1998 CR H10220, October 8, 1998[9]; Lynne B. Barr & Barbara J. Ellis, The New FCRA: An Assessment of the First

---

[9]   As Representative LeFalce explained:

> Since the companies providing employment screening for trucking firms seek applications in all parts of the country and communicate primarily by telephone, fax or mail, current FCRA requirements that disclosures and authorizations be made in person and in writing are inappropriate and burdensome. The legislation would add several narrowly crafted exceptions to FCRA that would permit—where employment applications are taken by phone, mail or electronically—greater flexibility **in providing required disclosures** and authorizations **either**

Year, 54 Bus. Law. 1343, 1349 (1999) (commenting that Subparagraph (B) "drew a very narrow exception to this requirement, and now permit certain employers to provide the prior disclosure and obtain the prior authorization orally or electronically…).

CPC cites two cases in support of its position, but neither of these unpublished opinions hold as CPC would like. (Def.'s Brief, pg. 11). In Boyd v. CEVA Freight, LLC, plaintiff was a prospective employee of defendant CEVA Freight, LLC ("CEVA"). No. 3:13-CV-00150-JAG, 2013 WL 6207418, at *4 (E.D. Va. Nov. 27, 2013). Because CEVA, a transportation company, failed to provide a summary of rights pursuant to Subsection (B) prior to obtaining a consumer report, plaintiff instituted a class action on behalf of himself and putative classes. CEVA provided notice that it intended to obtain a consumer report regarding plaintiff, but failed to provide a summary of rights as required by Subsection (B). Defendant argued that it was not required to provide a summary of rights because it had the option of either adhering to § 1681b(b)(2)(A) (which only requires written disclosure) or Subsection (B), requiring CEVA to provide both a disclosure and a summary of rights. At no point did the court in Boyd ever discuss whether a written disclosure provided pursuant to Subparagraph (B) must comply be clear and conspicuous disclosure, solely in a document pursuant to § 1681b(b)(2)(A). Not only does the clear wording of the § 1681b(b)(2)(A) and Subparagraph (B) confirm that it does, it would make little sense to allow CPC to provide a disclosure that was not clear and conspicuous.

CPC also cites Daniel v. Swift Transp. Corp. in support of its claim that it is not required to comply with § 1681b(b)(2)(A). 2012 WL 12827627 (D. Ariz. Jan. 9, 2012). Swift, however, is as unpersuasive as Boyd. In Swift, plaintiff alleged that Swift, a transportation company, failed to

---

by **"oral, written or electronic means"**, and in permitting delivery of a credit report to an applicant within three days after an adverse employment decision. (emphasis added).

provide plaintiff with a disclosure pursuant to Subparagraph (B) since the disclosure did not clearly inform plaintiff that it would be obtaining a consumer report. The court agreed that plaintiff has stated a plausible claim for relief, and that the acknowledgment that was signed may not qualify as valid consent. Again, this case did not discuss whether a written disclosure provided pursuant to Subparagraph (B) had to clear and conspicuous, in a document consisting solely of a disclosure. Neither Boyd or Swift stand for the proposition that CPC claims they do. As such, the plain reading of § 1681b(b)(2)(A) and Subparagraph (B) should control, and CPC should have sent disclosures that were clear and conspicuous, contained solely in a document.

### i. If the Court Determines that § 1681b(b)(2)(A) Does Not Apply, Leave to Amend Should Be Granted to Allege Violations of Subparagraph (B)

If the Court determines that CPC is not required to comply with § 1681b(b)(2)(A), then leave to amend should be granted to allow Ms. Tonge to permit the inclusion of a violation of Subparagraph (B). As noted above, Subparagraph (B) requires employers to provide a summary of rights pursuant to 615(a)(3) (§ 1681m(a)(3)). Section 1681m(a)(3) requires, among other things, that CPC include in its summary of rights that the consumer reporting agency did not make the decision to take adverse action. CPC admittedly failed to do this at any point, and this would be a violation of Subparagraph (B).

### b. CPC Failed to Provide a Clear and Conspicuous Disclosure, solely in a document As Required By § 1681b(b)(2)(A)

CPC claims that the disclosures that it provided to Ms. Tonge comply with § 1681b(b)(2)(A). (Def.'s Brief at pg. 12). However, as explained above, the disclosures that CPC provided are not clear and conspicuous, nor are they contained solely in a document. CPC presents prospective employees, all at once, 5 different documents that span approximately 20 pages. The disclosures as a matter of law and fact, cannot be clear and conspicuous because there is no

conceivable way any prospective employee could know the controlling disclosure, which are materially distinct as noted in the above chart found on pages 5-6.

Accordingly, CPC unquestionably violated § 1681b(b)(2)(A).

### c. CPC Violated § 1681b(b)(3), and Failed to Supply Post-Adverse Determination Information (Count III)

CPC contends that it complied with § 1681b(b)(2)(B)(i)(II), (III) and (IV) and supplied Ms. Tonge with the requisite information.  As discussed above, this assertion is not true, and these provisions of the FCRA required the following information to be provided within 3 business days following adverse action: (i) the address and telephone number of the consumer reporting agency that furnished the report, § 1681b(b)(2)(B)(i)(II); (ii) that the consumer reporting agency did not make the decision to take the adverse action, § 1681b(b)(2)(B)(i)(III); and (iii) that a free copy of the report may be obtained, *and a dispute made with the consumer reporting agency*. § 1681b(b)(2)(B)(i)(IV).

CPC never provided this information to Ms. Tonge.  Despite these clear facts, CPC audaciously asserts the used "substitute" means to comply with its obligations under these provisions of the FCRA. (Def.'s Brief at pg. 13).  As set forth in detail above.  CPC did not provide HireRight's information within 3 business days of denying her employment.  CPC also cannot argue that it does not need to notify Ms. Tonge that it was CPC that took adverse action against her, and not HireRight.  There is simply no basis for this exception in the express language of § 1681b(b)(2)(B)(i)(III). Finally, CPC cannot claim its adherence to § 1681b(b)(2)(B)(i)(IV) because Ms. Tonge had previously disputed the inaccurate information contained in her DAC Report. (Def.'s Brief, pgs. 9, 13).  First, the FCRA does not state that employers only need provide information that prospective employees may or may not know.  The FCRA makes no reference to any such exception, nor does any case law exist supporting this "substitute" compliance with §

1681b(b)(2)(B)(i)(IV).  Second, Ms. Tonge having previously disputed the incorrectly reported accidents does not speak to whether *she knew she could dispute the information **again***. Accordingly, CPC violated § 1681b(b)(2)(B)(i)(II), (III) and (IV).

### d. **N.J.S.A. 56:11-31(e)(1), (2) Are Not Preempted by the FCRA**

CPC alleges that the NJFCRA is preempted because it is inconsistent with the FCRA. (Def.'s Brief, pg. 14).  This assertion is simply false, and unsupported the law and facts.  By its express language, the general preemption provision under the FCRA states as follows:

> This subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.

15 U.S.C. § 1681t(a).

According to this standard, the FCRA does not preempt state credit reporting laws unless there is a specific inconsistency between the FCRA and the state law, or unless certain explicit FCRA exceptions apply.  See FTC Staff Summary § 625(a); see also Hughes v. Fid. Bank, 709 F. Supp. 639, 641 (E.D. Pa. 1989); see also Credit Data of Ariz., Inc. v. Ariz., 602 F.2d 195 (9th Cir. 1979); Baney v. Trans Union, LLC, No. 1:06-CV-2181, 2007 WL 1098523, at *1 (M.D. Pa. Apr. 10, 2007).  The FCRA's general preemption rule is a floor and not a ceiling.  Meaning that a state statute may provide for more rights to the consumer than the FCRA, but cannot limit a consumer's rights.  See Davenport v. Farmers Ins. Group, 378 F.3d 839, 842 (8th Cir. 2004).  A state law is inconsistent for preemption purposes, only where the actor would violate the FCRA by complying with the state statute.  The FTC specifically addressed this issue. Goldfarb, FTC Informal Staff Opinion Letter (Sept. 20, 1978) (the "Goldfarb Staff Letter"), attached as **Exhibit "H"**.  ("state law is superseded by federal law only when compliance with an inconsistent state law would result

in a violation of federal law." Id.   In the Goldfarb Staff Letter, in analyzing this very issue under

New York  state law it determined that:

> The New York Law requires prior written authorization by a job
> applicant before an investigative consumer report can be ordered by
> a user. The federal law (§606(a)) requires a written notice mailed or
> otherwise delivered to the subject not later than three days after the
> date on which the report was first requested. Again, since
> compliance with the more stringent state law would not result in any
> violation of the federal law, the state law is not superseded.

Id. (internal citations omitted).

Here, there is no inconsistency between N.J.S.A. 56:11-31 and 15 U.S.C. § 1681b(b)(3)(B).

Section 1681b(b)(3)(B) states that when an individual applies online, in writing, or over the phone,

the adverse action letter must be sent within three days of the decision, as opposed to prior to the

decision.  However, while the FCRA does not require pre-adverse action notices in this situation,

it would not be a violation of the FCRA for the user to send additional notices.  Therefore, as made

clear by the Goldfarb FTC opinion letter, because the NJFCRA simply provides more protection

to the consumer, it is not inconsistent with the FCRA, and, thus, is not preempted.

There is also no express provision of the FCRA that states that § 1681b(b)(3)(B) falls under

a specific exception to the general preemption provision.  Defendant argues that the specific

exception enumerated in § 1681t(b)(1)(C) is controlling in this matter.  However, § 1681t(b)(1)(C)

applies only to § 1681m(a) and (b).  Defendant makes the untenable assertion that because §

1681b(b)(3)(B) makes reference to § 1681m(a), that "it is logical" that Congress meant to also

incorporate § 1681b(b)(3)(B) into that very specific exception to the general rule.  However, that

which CPC claims is "logical", is not the law. The plain language reflects no indication in either §

1681b(b)(3)(B) or § 1681t(b)(1)(C) that those provisions are interchangeable or that Congress

intended to include § 1681b(b)(3)(B) in the narrowly crafted statement in § 1681t(b)(1)(C).  This

Court has continuously ruled that "it is not within the province of this Court to override the policy decisions made by Congress. When a statute's language is plain, the sole function of the courts is to enforce it according to its terms." Burrell v. DFS Servs., LLC, 753 F. Supp. 2d 438, 446 (D.N.J. 2010) (internal quotations and citations omitted). N.J.S.A. 56:11-31 is not preempted by the FCRA.

## IV.   PLAINTIFF HAS STATED CLAIMS FOR CLASSWIDE RELIEF

Defendant's argument that Plaintiff's class allegations should be either stricken or dismissed for failure to state a claim (Def.'s Brief, pg. 15.) is premature. The Amended Complaint meets the low threshold for alleging class claims at this initial stage of litigation. "Generally plaintiffs are entitled to conduct discovery relating to Rule 23's class certification requirements; thus, motions to strike class allegations filed before discovery are usually inappropriate and premature." Forst v. Live Nation Entm't Inc., No. 14-2452, 2015 WL 858314, at *5 (D.N.J. Feb. 27, 2015). Courts generally refrain from analyzing the sufficiency of a proposed class until Plaintiff moves for certification under Rule 23. Smith v. Lyons, Doughty & Veldhuius, P.C., CIV.A. 07-5139, 2008 WL 2885887, at *4 (D.N.J. July 23, 2008). Thus, motions to strike or dismiss class allegations prior to class certification are routinely dismissed. See, e.g., McNulty v. Fed. Hous. Fin. Agency, 954 F. Supp. 2d 294, 297-98 (M.D. Pa. 2013), aff'd., Delaware Cty., Pa. v. Fed. Hous. Fin. Agency, 747 F.3d 215 (3d Cir. 2014).

Deferring class certification decisions is appropriate in FCRA cases where discovery is particularly relevant to determining precisely what policies and procedures were used by a defendant. For example, in McPherson v. Canon Business Solutions, Inc., No. 12–7761, 2014 WL 654573, at *1 (D.N.J. Feb. 20, 2014), the plaintiff instituted a class action suit alleging that the defendant, her former employer, violated the FCRA by failing to provide pre-adverse action

disclosures. Defendant moved for dismissal of the class claims, which the Court denied as premature since plaintiff did not have the benefit of any discovery.[10]

Further, class allegations, as well as individual claims, must only satisfy the pleading requirements of Fed.R.Civ.P. 8(a), only requiring a "a short and plain statement of the claim showing that the pleader is entitled to relief." See Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) ("A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."). Plaintiff has adequacy pled commonality, predominance and adequacy in her class allegations. Defendant merely recites the law regarding the class allegations, and concludes without analysis or citation that Ms. Tonge cannot fulfill the requirements of predominance and commonality, and CPC offers only the bare allegation that Plaintiff has not properly plead adequacy.

First, the complaint sufficiently alleges commonality. Rule 23(a)(2) requires only that there be at least one question of law or fact common to the class. N.J. Thoroughbred Horsemen's Ass'n, Inc. v. Alpen House U.L.C., No. 08-cv-613, 2012 WL 893092, at *2 (D.N.J. Mar. 14, 2012). Here, there are several common issues of law alleged in the Amended Complaint: whether CPC violated the rights of the FCRA Improper Disclosure Class by failing to provide clear and conspicuous disclosures; whether CPC violated the rights of the NJ FCRA Adverse Action Class by failing to provide pre-adverse action notices; and whether CPC violated the rights of the FCRA Adverse Action Class by failing to provide notice of an adverse action within three days of the action being taken. As such, commonality is met.  See Clarke v. Lane, 267 F.R.D. 180, 196 (E.D. Pa. 2010)

---

[10] There are rare instances where a class claim may be stricken or dismissed prior to discovery.  Those limited circumstances only occur when complaint plainly fails to allege sufficient facts to state a class claim on its face.  See Clark v. McDonald's Corp., 213 F.R.D. 198, 205 (D.N.J. 2003) ("A defendant may move to strike class action allegations prior to discovery in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.").

(noting that a single common issue of law or fact, such as whether defendant engaged in a standardized form of conduct, will suffice to satisfy commonality) (citing <u>Chiang v. Veneman</u>, 385 F.3d 256, 265 (3d Cir. 2004)).[11]

Second, "the predominance requirement of Rule 23(b)(3) 'test[s] whether proposed classes are sufficiently cohesive to warrant adjudication by representation." <u>Sullivan v. DB Investments, Inc.</u>, 667 F.3d 273, 297 (3d Cir. 2011). Under Rule 23(b)(3), the court must determine whether common issues predominate by looking at "the nature of the evidence" that will be presented so that the court can "formulate some prediction as to how specific issues will play out." <u>In re Hydrogen Peroxide Antitrust Litig.</u>, 552 F.3d 305, 311 (3d Cir. 2008) (internal citations omitted). "The inquiry focuses on whether the efficiencies gained in resolving these common issues together are outweighed by the individual issues presented for adjudication. That common issues must be shown to predominate does not mean that individual issue[s] need be non-existent. All class members need not be identically situated upon all issues, so long as their claims are not in conflict with each other." <u>Summerfield v. Equifax Info. Servs. LLC</u>, 264 F.R.D. 133, 142 (D.N.J. 2009) (internal citation omitted). Because a court must decide the predominance issue by looking at the nature of the evidence, dismissing or striking a claim based on predominance prior to discovery is premature. Plaintiff has also sufficiently pleaded the predominance element in the Amended

---

[11]     Defendant attempts to paint the commonality requirement as a high bar to overcome, but that is simply not the case. Defendant cites <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 131 S. Ct. 2541, 2545, 180 L. Ed. 2d 374 (2011) and <u>Stone v. Advance Amer.</u>, 278 F.R.D. 562 (S.D. Cal. 2011) to support this proposition. However, the Court in <u>Wal-Mart Stores</u> simply reiterated that a Plaintiff must allege a "common question of law or fact" to show commonality. In that case, the court found that the class lacked commonality because Title VII requires a court to analyze "the reason for a particular employment decision." Moreover, in <u>Stone</u>, a non-precedential district court decision, the class allegation was that the defendant had not provided Spanish loan documents to predominant Spanish speakers. The district court held that there was no commonality because there needed to be an inquiry as to whether each class member was fluent in English. In contrast, the question of law and fact in this case are both simple and universal: Based on Defendant's policies and procedures, did class members receive FCRA compliant documents. Plaintiff alleges in the Amended Complaint that CPC did not provide compliant documents, which are used routinely and systematically, and so commonality has been sufficiently plead. Am. Comp. ¶¶ 22, 42-52.

Complaint. The Amended Complaint makes clear that the predominant questions of law and fact specifically stem from CPC's uniform policies and procedures, which result in common violations of the FCRA and NJFCRA. See Am. Comp. ¶¶ 22, 42-52.

Defendant argues that Plaintiff cannot produce "representative proof" for each class and that the Court would be required to conduct a "mini trial" on whether each class member suffered harm.[12] This claim is not true. Plaintiff's allegations are concise and require little analysis to make a legal determination. Plaintiff makes three essential claims: (1) that CPC does not provide a clear and conspicuous disclosure; (2) that CPC does not send pre-adverse action letters in accordance with the NJFCRA; and (3) that CPC does not send adverse action notices within three days of taking the action. For allegations (2) and (3) the material issue is whether CPC sends the required adverse action letters. For allegation (1), the issue hinges on whether CPC's disclosures are clear and conspicuous. Defendant provides the same disclosures to all applicants, and there would be no need to inquire into the individual circumstances of class members. Therefore, the claims in the Amended Complaint are sufficiently cohesive and Plaintiff has satisfied the predominance requirement.

Finally, Defendant makes the conclusory statement that Ms. Tonge has not sufficiently pleaded adequacy within her complaint, but provides no facts or law to support the allegation. "Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not

---

[12] Defendant cites Smith v. Lyons, Doughty & Veldhuius, P.C., CIV.A. 07-5139, 2008 WL 2885887, at *5 (D.N.J. July 23, 2008) to support its claims. However, the Court's decision in Smith hinged on the fact that the plaintiff in that case did not allege in the complaint that the defendant had defective policies and procedures. Because of this defect of the complaint, the Court held that it would have to undertake an individual analysis of each class member's claim to determine if the FCRA was violated. That is not the case here. Plaintiff clearly alleges in her complaint that Defendant's violations of the FCRA are routine and systematic, and are a result of the policies and procedures (and same documentation) Defendant uses for all prospective employees.

have interests antagonistic to those of the class." <u>Wetzel v. Liberty Mut. Ins. Co.</u>, 508 F.2d 239, 247 (3d Cir. 1975). In this case, Plaintiff has secured counsel that is experienced in class litigation. Moreover, Plaintiff's interests are aligned with those of the classes. As mentioned above, Plaintiff's injuries are substantially the same as those of other class members; thus, Plaintiff's interest are in line with the interest of the individual class members.

Therefore, Plaintiff has sufficiently plead the class allegations in the Amended Complaint, and CPC's assertions are premature.

<u>**CONCLUSION**</u>

For all the reasons set forth above, Plaintiff respectfully requests that this Court deny CPC's Motion in its entirety.

Respectfully submitted,

**THE KIM LAW FIRM, LLC**

Dated:  June 19, 2017      BY:    */s/ Richard H. Kim*
Richard Kim, Esquire
Drucilla Tigner, Esquire
Attorney I.D. Nos.: 010412005/155772016
Centre Square – West Tower
Suite W-3110
Philadelphia, PA 19102
Ph. 855-996-6342/Fax 855-235-5855
rkim@thekimlawfirmllc.com
dtigner@thekimlawfirmllc.com

PROFY PROMISLOFF & CIARLANTO, P.C.
JOSEPH M. PROFY (ID# 77141)
JEFFREY J. CIARLANTO (ID# 205838)
100 N. 22nd Street, Unit 105
Philadelphia, PA 19103
Tel: (215) 259-5156
Fax: (215) 600-2642
profy@prolawpa.com
ciarlanto@prolawpa.com

Attorneys for Plaintiff Christine Tonge